UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Number |
| | ) | 19-201-JDL |
| ANTHONY JONES. | ) | |

MOTION TO SUPPRESS EVIDENCE

I.     BACKGROUND

On September 30, 2019, at about 6:10 P.M., Mr. Jones was operating a vehicle on the Maine Turnpike, headed northbound. A female passenger accompanied Mr. Jones. The vehicle, a Jeep Grand Cherokee, had an expired inspection sticker.

Maine State Trooper Darcy spotted the expired inspection sticker as he was passing the vehicle, and initiated a traffic stop, presumably to address the expired inspection sticker. Mr. Jones engaged his right directional signal and immediately pulled the vehicle over in the right breakdown lane.

Trooper Darcy approached the vehicle from the passenger side and requested Mr. Jones' license. While he was receiving the documents, the Trooper told Mr. Jones that he needed to get that inspection sticker dealt with. Immediately thereafter, Trooper Darcy ordered Mr. Jones to exit the vehicle.[1] Once out of the vehicle, Trooper Darcy first patted Mr. Jones down. He then began interrogating Mr. Jones about his driving history, whether he had ever been arrested, and where he was coming from.

---

[1] In his report, the Trooper claims that he "asked Jones if he minded stepping out of the vehicle to speak with me and he agreed." This was a gross misrepresentation of the facts. On the video, the Trooper can clearly be heard commanding Mr. Jones to exit the vehicle.

After interrogating Mr. Jones, Trooper Darcy proceeded back to the vehicle and began interrogating the female passenger, asking basically the same questions that he asked Mr. Jones, although he asked her in addition, about how many outfits she brought with her for a weekend visit to New York.

Both Mr. Jones and his passenger told the Trooper that they had been in New York for the weekend. Mr. Jones told the Trooper that he stopped in Fitchburg, MA on the way back to see a friend. The passenger did not indicate that they stopped to see anyone. When pressed, Mr. Jones was not sure what town he stopped in and clarified that he arranged to meet his friend at a gas station.

Once Trooper Darcy was finished interrogating the passenger, he turned his attention back to Mr. Jones and directed him to stand next to the passenger side of the police cruiser. To this point, aside from telling Mr. Jones, when he made his initial contact with him, of the reason for the stop, there was no discussion of the expired inspection sticker.

At about the four-minute mark of the stop, the Trooper told Mr. Jones to stand at the passenger window of the cruiser, and the interrogation continued. For the next several minutes the Trooper questioned Mr. Jones about where he had been and tells him repeatedly that his story about where he had been did not make sense. It is not clear during this segment of the video whether or not the Trooper was checking Mr. Jones' license and for warrants, as he was speaking to him,[2] while Mr. Jones was standing at the passenger side of the cruiser. When Mr. Jones attempted to have the Trooper focus on the inspection sticker issue, the Trooper resisted and continued to engage Mr. Jones in

---

[2] The defense has requested dispatch logs in order to determine when the Trooper checked for warrants and Mr. Jones' license. What has been provided as of the date of this writing is incomprehensible.

conversation about where he had been, repeatedly telling Mr. Jones that his story did not make sense.

Approximately 10 minutes into the encounter, Trooper Darcy can be heard calling for the drug K-9 to come to the scene. He also tells Mr. Jones that "his license is good." Nonetheless, he then continued to interrogate Mr. Jones about where he had been and who he had seen. Mr. Jones can be heard asking what the interrogation has to do with the reason for the traffic stop.

Approximately 15 minutes into the stop, with still no effort, nor progress towards addressing the inspection sticker issue, Trooper Darcy went back to the female passenger and resumed his interrogation of her, the topics being her prior drug trafficking history and where they had been that day. He eventually ordered her to exit the vehicle. Once outside the vehicle Trooper Darcy ordered the passenger to stand next to the vehicle. As she stood next to the vehicle, Trooper Darcy walked around the vehicle, peering into the windows of the vehicle.

Approximately 23 minutes into the encounter, a second Trooper appeared and began to search around the outside of the vehicle. Around this time, Mr. Jones asked the Trooper why he was being detained for the traffic violation. The Trooper responded to the effect that his story about where he had been did not make any sense. At no time up to this point was Mr. Jones told that he was free to leave, nor was he told that he was not being detained.

For the next twenty minutes, approximately, there was some small talk between the Trooper and Mr. Jones. About 45 minutes into the encounter, the drug sniffing K-9 arrives and is led around the vehicle. The drug K-9 allegedly alerted on various parts of

the vehicle, which caused the Troopers to search the vehicle. Inside the vehicle, the Troopers allegedly located heroin and cash.

After the drugs and cash were found, Mr. Jones was officially placed under arrest. At this point, approximately an hour and 15 minutes had elapsed from the time of the stop.

Subsequent to his official arrest, Mr. Jones admitted that he had drugs on his person and assisted the police in retrieving the drugs. He also made incriminating statements about the drugs found in the vehicle including that they were his drugs and that he sells drugs.

## ARGUMENT

The Supreme Court in *United States v. Caballes*, 543 U.S. 405, 407 (2005), a dog sniff case, held that a dog sniff of the exterior of a vehicle does not violate the 4th amendment so long as the traffic stop is not prolonged past the time necessary to address the reason for the stop and to check certain unrelated issues that are ordinary to a traffic stop, such as checking the license of the driver and determining whether there are warrants for the driver or passenger. The Court reiterated this rule in *Rodriguez v. United States,* 135 S.Ct 1609, 1616 (2015). The Court there also specified that a dog sniff is a procedure aimed at ordinary criminal investigation and is not fairly characterized as part of an officer traffic mission. *Id.* at 1615. In essence, the law is that the police need to have reasonable suspicion of some other crime in order to prolong a traffic stop beyond the time necessary to deal with the traffic stop.

In this case, the Trooper knew as of about the 10-minute mark of the stop that Mr. Jones had a valid license and that he was not wanted. The traffic stop should have ended at that point. However, with absolutely no evidence that drug activity was afoot, Mr. Jones was detained for another approximately 35-minutes until the drug dog showed up.

To meet the reasonable suspicion standard, the government must point to specific and articulable facts, together with inferences drawn from those facts, that reasonably suggest criminal activity has occurred or is imminent. *Terry*, 392 U.S. at 21. Inarticulate hunches or generalized suspicions are insufficient to meet this standard. See *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979).

In this case, the Trooper claims that he had reasonable suspicion to extend the traffic stop based upon two things. First, he claims that the fact that the passenger had a prior drug conviction gave him reasonable, articulable suspicion for the detention. Second, he claims that the minor discrepancy between what Mr. Jones told him about where he had been, and what the passenger told him about where they had been, gave him reasonable suspicion that drug activity was going on. Neither of these facts, even when viewed collectively, gives rise to reasonable, articulable suspicion that Mr. Jones was committing a drug crime. Therefore, his prolonged detention was in violation of the 4th amendment. Accordingly, pursuant to the exclusionary rule, any evidence gathered as a result of the illegal search of Mr. Bruneau or his vehicle must be suppressed from evidence during the trial of this matter. *Weeks v. United States*, 232 U.S. 383, 398 (1914).

## CONCLUSION

For the reasons stated above, Mr. Jones requests that any and all evidence gathered as a result of the dog sniff, including drugs found in the vehicle, drugs found on

Mr. Jones, and any statements made by Mr. Jones, be excluded from evidence during the trial of this matter.

        /s/Peter E. Rodway, Esq.
        rodlaw@maine.rr.com
        P.O. Box 444
        Portland, Maine 04112-0444
        207-773-8449

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

    I hereby certify that on November 12, 2019, I electronically filed Motion to Suppress with the Clerk of The Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Meghan Connelly, Esq., and I hereby certify that on November 12, 2019, I mailed by U.S. Mail, the document to the following non-registered participant: Mr. Anthony Jones.

        /s/Peter E. Rodway, Esq.