UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Number |
| | ) | 19-201-JDL |
| ANTHONY JONES. | ) | |

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE

I. **Trooper Darcy Prolonged the Traffic Stop of Mr. Jones Beyond the Time Reasonably Required to Complete the Mission of the Traffic Stop.**

a. **Background**

On September 30, 2019, at approximately 6:10 P.M., Mr. Jones and a female passenger were heading northbound on the Maine Turnpike in a Jeep Grand Cherokee when they were stopped by Maine State Trooper Darcy for an expired inspection sticker. Upon stopping the vehicle, Trooper Darcy approached the passenger side window, informed Mr. Jones that his inspection sticker had expired, and asked to see the licenses of the two vehicle occupants. After briefly checking the licenses, Trooper Darcy ordered Mr. Jones to exit the car. From the moment Trooper Darcy exited his vehicle, to the moment Mr. Jones was ordered to exit his, less than one minute had elapsed.

In this time, Trooper Darcy did not attend to any issues relating to the reason for the stop beyond informing Mr. Jones that his inspection sticker had expired. Instead, Trooper Darcy ordered Mr. Jones out of the car, patted him down, and interrogated him about issues unrelated to the reason for the stop. In fact, it was not until approximately ten minutes in to the stop that Trooper Darcy even checked Mr. Jones' license. The entire first ten minutes of the stop consisted of Trooper Darcy interrogating Mr. Jones and his

passenger about their itinerary and arguing with Mr. Jones about whether what he said made any sense.[1]

### b. Argument

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "[t]he Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable." *Carroll v. United States*, 267 U.S. 132, 147 (1925). To determine "whether [a] seizure and search were 'unreasonable' [the] inquiry is a dual one -- whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). To meet this standard, the government must point to specific and articulable facts, together with inferences drawn from those facts, that reasonably suggest criminal activity has occurred or is imminent. *Terry*, 392 U.S. at 21. Inarticulate hunches or generalized suspicions are insufficient to meet this standard. See *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979).

With regards to the scope of an officer's actions, a "stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's

---

[1] The Trooper made much of the fact that Fitchburg, MA is out of the way of a person travelling from New York. The Court should note that a traveler driving on I 290 through Worcester, which is part of a route of travel from New York to Maine, features three signs that say "Fitchburg."

shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). Thus, a stop and seizure based solely on a traffic violation "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of dealing with the violation at issue. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Typically, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 135 S. Ct. at 1615. "[S]uch inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. However, "an officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

In determining reasonable suspicion, "[r]easonable suspicion requires something more than a 'naked hunch that a particular person may be engaged in some illicit activity,' but something less than probable cause that a person has committed a crime." *United States v. Hernandez, 2019 DNH 109*. This requires "the court [to] consider the 'totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing.'" *Id.* Additionally, "[t]his totality consists of 'the facts available to the officer at the moment of the seizure or search.'" *Id.*

The facts of the present case are extremely similar to those of the New Hampshire case *United States v. Hernandez*. In *Hernandez*, a New Hampshire State Police Officer stopped a vehicle due to a minor traffic violation, in this case following another car too closely, and for a discrepancy involving the color of the vehicle as listed on its

registration. *Id*. The stop began with the Officer explaining the reasoning for the stop and conducting other activities reasonably related to the mission of the stop, however instead of issuing a citation or further questioning the driver of the vehicle with regards to the traffic violation, the officer began inquiries into the driver's itinerary for the purposes of investigating unrelated criminal matters, specifically a suspicion of drug trafficking. *Id*. The Court held that by extending the stop beyond the scope of the initial stop, and by inquiring further into the driver's itinerary without reasonable suspicion, that the stop had been unreasonably prolonged and was a violation of the Fourth Amendment. *Id*.

In the present case, it is clear that Trooper Darcy unreasonably prolonged the stop beyond the scope of its mission when he asked Mr. Jones to exit his car approximately one minute into the traffic stop. At this time, there was absolutely no reasonable suspicion from which Trooper Darcy could have justified having Mr. Jones exit his car and begin intense inquiries into his trip itinerary. When Mr. Jones was asked to exit his vehicle, Trooper Darcy had not even begun to conduct any ordinary inquiries that were related to the mission of the stop, in this case an expired inspection sticker. Trooper Darcy did not begin to conduct any of these ordinary inquiries until approximately 10 minutes after Mr. Jones had been stopped, as the entire first 10 minutes of the stop were comprised of Trooper Darcy separating and questioning Mr. Jones and his passenger about matters unrelated to the expired inspection sticker. There was nothing out of the ordinary that occurred in the first minute of the stop that could have possibly provided Trooper Darcy with anything more than a "naked hunch that a particular person may be engaged in some illicit activity."

Additionally, in his report, Trooper Darcy did not state any facts or circumstances that would have caused him to have, or support a reasonable suspicion at the time he began investigating matters unrelated to the expired inspection sticker. In *Hernandez*, the officer at least attempted to support his prolonging of the stop with observations of suspicious, albeit insufficiently suspicious behavior or circumstances. Trooper Darcy did none of this. The officer in *Hernandez* also had completed the mission of the stop before proceeding with his own illegal investigations. Trooper Darcy did not bother to complete, or even begin to complete the mission of the stop before launching his own unreasonable investigation into his suspicions of Mr. Jones. Essentially, conditions to support the inclusion of the stop in *Hernandez* were objectively more favorable than the circumstances of this case, and the Court in *Hernandez* found the officer's actions to be in violation of the Fourth Amendment.

As such, because Trooper Darcy almost immediately exceeded the scope of the traffic stop's mission by investigating his "naked hunch" that Mr. Jones may be involved in criminal behavior with absolutely no reasonable suspicion, Trooper Darcy unreasonable prolonged the stop in violation of the Fourth Amendment. Accordingly, pursuant to the exclusionary rule, any evidence gathered as a result of the illegal search and seizure of Mr. Jones and his vehicle must be suppressed from evidence during the trial of this matter. *Weeks v. United States*, 232 U.S. 383, 398 (1914).

## CONCLUSION

For the reasons stated above, Mr. Jones respectfully requests that any and all evidence gathered as a result of the violation of his 4th amendment rights be suppressed from evidence during the trial of this matter.

Dated at Portland, Maine this 30th day of December, 2019.

/s/Peter E. Rodway, Esq.
rodlaw@maine.rr.com

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

I hereby certify that on December 30, 2019, I electronically filed Reply to Government's Response to Motion to Suppress with the Clerk of The Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Meghan Connelly, Esq., and I hereby certify that on December 30, 2019, I mailed by U.S. Mail, the document to the following non-registered participant: Mr. Anthony Jones.

/s/Peter E. Rodway, Esq.