UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 2:19-cr-00201-JDL |
| | ) |
| ANTHONY JONES, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR DISCOVERY**

The Government has charged Anthony Jones with one count of possession with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 841(a)(1). Jones has filed a motion to suppress all evidence collected following a dog sniff of his vehicle by a narcotic-detecting police dog (ECF No. 23). That motion remains pending and has not yet been heard. Jones has also filed the present motion seeking discovery of certain materials beyond those that the Government has already provided him (ECF No. 30). For reasons I will explain, Jones's Motion for Discovery is denied.

## I.  BACKGROUND

Jones's motion to suppress asserts that on September 30, 2019, Trooper John Darcy of the Maine State Police pulled over the vehicle Jones was driving because its inspection sticker had expired. There was one passenger in the vehicle at the time. A second officer arrived soon thereafter. At some point after initiating the traffic stop, Trooper Darcy called for a narcotic-detecting dog and its handler. Upon arrival, the handler conducted a dog sniff of Jones's vehicle, and the dog purportedly alerted to the odor of narcotics in the vehicle. A subsequent search of the vehicle allegedly

revealed heroin and cash. At that point, Jones was placed under arrest. Jones then told the troopers that he had drugs on his person and helped them retrieve the drugs. He further stated that he sold drugs and admitted that the drugs in the vehicle were his.

Jones has moved to suppress evidence of the heroin, the cash, and the incriminating statements that he made after he was arrested. In advance of the hearing on the motion to suppress, he now moves for additional discovery.

## II. ANALYSIS

Jones's motion for discovery seeks: (A) performance records of the narcotic-detecting dog and its handler, and (B) several years' worth of material regarding prior stops conducted by Trooper Darcy. I address each of these requests in turn.

### A. Field Performance Records of the Narcotic-Detecting Dog and Its Handler

Jones seeks the field performance records of the police dog that conducted the dog sniff of the vehicle he was driving, presumably so that he may argue that the dog's positive alert to the presence of narcotics in the vehicle did not establish probable cause to search the vehicle.[1] *See United States v. Brown*, 500 F.3d 48, 57 & n.3 (1st Cir. 2007) (noting that a "canine sniff outside a vehicle can provide probable cause to search the vehicle" but that the existence of probable cause "depends upon the dog's reliability"). The Supreme Court addressed the relevance of such records to a court's probable cause analysis when considering a motion to suppress in *Florida v.*

---

[1] Jones's motion for discovery also requests training and certification records of the dog and its handler. The Government represents that it has since provided those records to Jones. Accordingly, I deny the motion for discovery as moot with respect to those records.

*Harris*, 568 U.S. 237 (2013).

In *Harris*, a police dog alerted during a traffic stop of the defendant, signaling that contraband was present. *See id.* at 240. Although a subsequent search of the defendant's vehicle revealed contraband, none of it was the type of contraband the dog was trained to detect. *See id.* at 240–41. The defendant moved to suppress the contraband, arguing that the dog's positive alert did not establish probable cause to search his vehicle because the dog was unreliable. *See id.* at 242. In making this argument, the defendant relied in part on the dog's prior performance in the field, emphasizing that the same dog had falsely alerted to the presence of contraband in his vehicle on another occasion. *See id.* at 241–42. The defendant also pointed out that the dog's field performance records were incomplete and therefore unreliable. *See id.* at 242. The Florida trial court denied Harris' motion to suppress, but the Florida Supreme Court reversed, concluding that a dog's positive alert could not establish probable cause to search a vehicle unless the Government presented field performance records and other objective evidence showing that the dog was reliable. *See id.* at 242–43.

The United States Supreme Court reversed the Florida Supreme Court's decision, explaining that requiring field performance records to establish probable cause was the "antithesis" of the totality-of-the-circumstances analysis used to determine probable cause. *Id.* at 244–45. The Court also criticized the weight the Florida Supreme Court gave to field performance evidence in general:

> [T]he decision below treats records of a dog's field performance as the gold standard in evidence, when in most cases they have relatively limited import. Errors may abound in such records. If a dog on patrol

3

> fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate a search. Field data thus may not capture a dog's false negatives. Conversely (and more relevant here), if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives. By contrast, those inaccuracies—in either direction—do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment know where drugs are hidden and where they are not—and so where a dog should alert and where he should not. The better measure of a dog's reliability thus comes away from the field, in controlled testing environments.

*Id.* at 245–46 (footnotes omitted). Nevertheless, the Supreme Court emphasized that a defendant "must have an opportunity to challenge . . . evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* at 247. And the Supreme Court's decision indicates that "evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant." *Id.*

Since *Harris*, the two circuits that have addressed the question of whether the Government must always produce a dog's field performance records reached different conclusions. The Second Circuit held that a district court abused its discretion in denying a defendant's request for field performance records. *United States v. Foreste*, 780 F.3d 518, 529 (2d Cir. 2015). The court opined that "the principle that a defendant 'must have an opportunity to challenge . . . evidence of a dog's reliability' would be stripped of its value if the defendant were not entitled to discover the evidence on which he would base such a challenge." *Id.* (internal citation omitted) (quoting *Harris*, 568 U.S. at 247); *see also United States v. Flores*, No. 2:16-CR-0833-

4

CAS, 2017 WL 2056018, at *7 (C.D. Cal. May 8, 2017).

By contrast, the Eighth Circuit held that a district court did not abuse its discretion when it denied a defendant access "to minimally probative field-performance records for the purpose of cross-examining" the trooper responsible for the dog. *United States v. Salgado*, 761 F.3d 861, 867 (8th Cir. 2014). A district court applying *Salgado* explained that a defendant was not automatically entitled to such evidence but instructed that, "[i]f there are peculiar circumstances to justify discovery of [the dog]'s field-performance records, the magistrate judge may order the government to produce them." *United States v. Trejo*, 135 F. Supp. 3d 1023, 1036 (D.S.D. 2015).

The Court of Appeals for the First Circuit has not had occasion to address this issue, though one judge in this district has. In *United States v. White*, No. 2:13-cr-48-DBH, 2013 WL 5754948 (D. Me. Oct. 22, 2013), the court denied a defendant's motion for discovery of a dog's field performance records. *Id.* at *1. The court emphasized that the defendant had "offered no reason why he should be entitled to information beyond that contemplated by the Supreme Court in the run-of-the-mill drug-sniffing dog case." *Id.* at *2.[2]

Based on the Supreme Court's reasoning in *Harris* that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert" and that with such evidence "a court can presume

---

[2] The First Circuit affirmed the subsequent denial of the motion to suppress in *White*, and because it affirmed the district court's finding of probable cause for reasons not involving the dog sniff, the court specifically declined to "separately consider the issues raised by the district court's denial of [the defendant]'s motion for discovery." *United States v. White*, 804 F.3d 132, 135, 138 (1st Cir. 2015).

5

(subject to any conflicting evidence offered) that the dog's alert provides probable cause to search," 568 U.S. at 247, I conclude that the approach followed in *Salgado* and *White* is most in keeping with *Harris*. That is, a defendant requesting field performance records of a narcotic-detecting dog and its handler must make a showing that such records are material. Thus, a proffer indicating that the narcotic-detecting dog or its handler lacked proper training or certification would support the need for additional discovery regarding the dog or handler's field performance. So too might a proffer indicating that the dog has falsely alerted on other occasions. Because Jones has made no such showing here, the motion for discovery as to the narcotic-detecting dog's field performance records is denied.

### B.    Prior Stops Conducted by Trooper Darcy

Jones also requests the records of "[a]ll police reports and video for stops conducted on the Maine Turnpike by Trooper Darcy" since September 2016. ECF No. 30 at 2. Jones requests numerous details as to each stop. He seeks the date of each stop, the names of the occupants of the vehicles, the circumstances of each case, and the race and ethnicity of the driver and passenger. He also seeks information about whether Trooper Darcy administered *Miranda* warnings prior to any questioning, whether Trooper Darcy ever cited a driver without conducting a search, ordering the driver out of the vehicle, or calling for a police dog, and whether any search provided a negative result as to the presence of drugs.

Jones argues that the Government must disclose this information under the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), which held that the prosecution has a duty under the Due Process Clause of the Fourteenth

6

Amendment to disclose, upon request, certain evidence that is favorable to the accused and material to guilt or punishment.  *See United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011).

"Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different."  *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).  "The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*," and the government's decision is "ordinarily final."  *Id.*  However, where a defendant requests specific materials that the government maintains are not discoverable under *Brady*, a court may conduct an *in camera* review of the disputed materials in certain instances.  *See id.*  To obtain such a review by a court, a defendant must make a showing that the materials in question "could contain favorable, material evidence."  *Id.*  The defendant "should be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material."  *Id.* at 269.

Jones argues that the evidence relating to Trooper Darcy's prior stops is material because it will help him "develop his argument" that his case involves an instance of racial profiling.  ECF No. 30 at 6.  Jones argues that "this case seemingly involves an instance of racial profiling," because Jones is black and because "[t]here was simply no reasonable suspicion that anything illegal was afoot that could justify" Trooper Darcy's actions.  *Id.* at 1, 6.

I do not resolve the question of under what circumstances information that might support a defendant's assertion of racial profiling and selective enforcement becomes "material" for purposes of the Government's *Brady* obligations because Jones has failed to offer any support for the premise of his request in this case: that Trooper Darcy's investigation was not supported by a reasonable suspicion of criminal activity.[3]  Nor has an evidentiary hearing been held yet on Jones' motion to suppress at which the Government will have the opportunity to present evidence in connection with the reasonable suspicion standard.  Accordingly, at this stage of the proceedings, Jones has not shown that the information and records he seeks should be subject to an *in camera* review by the Court.

### III. CONCLUSION

For the foregoing reasons, Jones's Motion for Discovery (ECF No. 30) is **DENIED**.

**SO ORDERED.**

Dated:  June 12, 2020

                                                    /s/ JON D. LEVY
                                        **CHIEF U.S. DISTRICT JUDGE**

---

[3] Although this issue was addressed no more than indirectly in the parties' briefs, I note that several courts have determined that *Brady* does not compel the disclosure of information in connection with a defendant's claim of selective enforcement.  *See, e.g., United States v. Washington*, 869 F.3d 193, 221 (3d Cir. 2017) (noting that certain information "relevant to a selective enforcement claim" is "not ordinarily . . . the sort of discovery material available to a criminal defendant under Fed. R. Crim. P. 16 or *Brady* and its progeny"); *cf. United States v. Safavian*, 233 F.R.D. 12, 20 (D.D.C. 2005) (denying discovery of selective prosecution evidence unless it was independently discoverable under *Brady*); *United States v. Blumberg*, No. CRIM. 00-10-B-S, 2000 WL 1511194, at *5 (D. Me. Oct. 5, 2000) (holding that selective prosecution evidence is not material under *Brady*); *United States v. Feliciano*, 998 F. Supp. 166, 174 (D. Conn. 1998) (denying request for evidence which was "framed as a request . . . under *Brady*" but which was "really for evidence of selective prosecution"); *cf. also United States v. Armstrong*, 517 U.S. 456 (1996) (concluding that evidence of selective prosecution is not "material" under what is now Fed. R. Crim. P. 16(a)(1)(E)).