UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.  2:19-cr-00201-JDL |
| ) | |
| ANTHONY JONES ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER DEFENDANT'S MOTION FOR DISCOVERY**

The United States of America, by and through its attorneys, Halsey B. Frank, United States Attorney for the District of Maine, and Meghan E. Connelly, Assistant United States Attorney, respectfully objects to defendant Anthony Jones' Motion for Reconsideration of Defendant's Motion for Discovery (ECF No. 49).  The defendant has been charged by indictment with one count of possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1) (ECF No. 16). The defendant reasserts his request for three years of material pertaining to Trooper John Darcy.  For the following reasons, the government respectfully requests that the defendant's motion for reconsideration be denied.

**PROCEDURAL HISTORY**

On January 16, 2020, the defendant filed a discovery motion (ECF 30) seeking canine performance reports and three years of records pertaining to prior stops by Trooper John Darcy. On February 6, 2020, the government filed a response in opposition (ECF 34), asserting that the request was outside the purview of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  The Court denied the defendant's request on the grounds that the defendant had not shown that the information and records he sought should be subject to an *in camera*

1

review by the court, as there was no evidence before the court for it to conclude that Darcy's investigation was not supported by reasonable suspicion of criminal activity.

On July 15, 2020, the defendant filed the instant motion for reconsideration claiming new evidence was uncovered warranting the reconsideration of his motion.  He seeks to obtain all police reports and videos for stops on the Maine Turnpike by Darcy for three years prior to September 30, 2019. He also seeks:

- specific details on how many times Darcy has stopped vehicles;
- the date, time, and name of the occupants;
- circumstances of the case; race and ethnicity of the driver and passenger;
- whether *Miranda*[1] was administered;
- whether Darcy has cited a driver without searching his vehicle;
- whether Darcy cited a driver without having the individual exit the vehicle;
- whether Darcy cited a driver without calling a canine;
- whether there were any negative results on the searches Darcy requested.

## ARGUMENT

### DISCOVERY ON A CLAIM OF SELECTIVE ENFORCEMENT ON THE BASIS OF RACE MAY NOT BE ORDERED ABSENT EVIDENCE THAT SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE HAVE NOT BEEN STOPPED AND/OR ARRESTED

The defendant's motion for reconsideration should be denied.  He seeks discovery in support of a claim of selective enforcement, arguing that Darcy selects individuals of color to pull over.  In making his argument, the defendant turns to the standard set forth by the Supreme Court in *United States v. Armstrong*, 517 U.S. 465 (1996), where the Court explained that to

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966)

obtain discovery in support of a claim of selective prosecution based upon race, the defendant must show that other races could have been prosecuted but were not. *Id.* at 469. The defendant must make a credible showing with some evidence of different treatment of similarly situated persons. *Id.* at 470. Here, the defendant cites two cases that he believes demonstrate a pattern of selective enforcement by Darcy: *State of Maine v. Edward Williams,* YRKCD-CR-2018-00713**,** York County Superior Court, and *United States v. Terrel Walker*, 19-220-JDL. These two cases do not provide the evidence sufficient to meet the standard in *Armstrong* and as a result, the defendant's motion should be denied.

### A Defendant Seeking Discovery On A Claim of Selective Enforcement Must Make A Substantial Threshold Showing

Selective enforcement of motor vehicle laws on the basis of race is a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001); *see also Whren v. United States*, 517 U.S. 806, 813 (1996); *Flowers v. Fiore*, 359 F.3d 24, 34-35 (1st Cir. 2004). Although the First Circuit has not addressed the matter of selective enforcement as it pertains to discovery, several other Circuits have. In particular, both the Seventh and Tenth Circuits have applied the standards articulated by the Supreme Court in *Armstrong* to selective enforcement claims. The government agrees with the defendant's analysis in his motion that this Court should apply the *Armstrong* standard to the defendant's motion.

In *United States v. Alcaraz-Arellano,* 441 F.3d 1252 (10th Cir. 2006), which stemmed from a traffic stop, the defendant filed a motion to dismiss and for discovery based on a claim of selective enforcement, arguing that the officer's decision to stop him was based, at least in part, on his race. *Id.* at 1261. Alcaraz-Arellano further requested, just as the defendant has here, information on various policies from the law enforcement agency, as well as personnel files from

3

the officer including any records regarding racial-profiling complaints against him, records of the officer's vehicle stops for three years, and materials relating to the officer's drug-interdiction training. *Id.* The Tenth Circuit applied the *Armstrong* standard and noted that in a selective prosecution case, two elements must be met: (1) the federal prosecutorial policy had a discriminatory effect, and (2) it was motivated by a discriminatory purpose. *Id*. at 1263 (*citing Armstrong*, 517 U.S. at 465). The court determined that similar standards should apply to selective enforcement claims and ruled "the standard for proving a selective-enforcement claim should be, as with selective prosecution claims, a demanding one." *Id.* Therefore, in order to obtain discovery the defendant had to present evidence "from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Id.* To prove discriminatory effect, an individual "must make a credible showing that a similarly-situated individual of another race could have been, but was not stopped or arrested…for the offense for which the defendant was stopped or arrested." *Id.* And to establish a discriminatory purpose, it must be demonstrated that discriminatory intent was a motivating factor in deciding to enforce the law against the defendant. *Id.* This could be proven by either direct or circumstantial evidence. *Id.*

In *United States v. Barlow*, 310 F.3d 1007 (7th Cir. 2002), the Seventh Circuit reached the same conclusion as the Tenth Circuit in *Alcaraz-Arellano,* in determining that the *Armstrong* standard applied in selective enforcement cases. *Id.* at 1010. To determine whether law enforcement's actions had a racially discriminatory effect, the court ruled, members of a protected racial group must illustrate they received less favorable treatment than nonmembers of the protected racial class. *Id.* Specifically, an African-American claimant must demonstrate that

4

a law or regulation was enforced against him, but not against a similarly-situated individual of other races. *Id.*[2]

The standard in *Armstrong* should be applied to the instant matter, as the facts are akin to *Alcaraz-Arellano* and *Barlow*, and are not in line with that of a stash house reverse-sting operation. The dynamics inherent in the formulation and implementation of stash house reverse-sting operations are unique and not present in every day run-of-the-mill traffic stops. In cases outside the stash house reverse sting context, the required showing to justify discovery is more demanding, as evidenced by the decisions from the Seventh and Tenth Circuits. This case is no different and *Armstrong* should apply.

**The Showing To Obtain Discovery Must Include Evidence That Similarly Situated Persons Of Other Races Have Not Been Stopped And/Or Arrested**

While the First Circuit has not directly addressed the issue of selective enforcement, it has addressed selective prosecution and the definition of "similarly situated" individuals in the context of selective prosecution.[3] "Although we have not previously provided a distinct definition of the term 'similarly situated' in the selective prosecution context, classic equal

---

[2] It should be noted in cases pertaining to the limited context of stash house reverse-sting operations, some Circuits have espoused a more relaxed standard for selective enforcement discovery than that articulated in *Armstrong*. *See, e.g., United States v. Washington,* 869 F.3d 193, 220 (3rd Cir. 2017) (finding that because the reverse-sting model is a defined operation with official policy implemented by an agency, claims of unconstitutional polices or practices lodged against it rather than an individual cannot be met with qualified immunity or good faith exception. Therefore, motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong* framework.) *United States v. Davis*, 793 F.3d 712 (7th Cir. 2015)( adopted a more permissive standard for discovery in stash house reverse-sting operations and did not address nor overrule the finding in *Barlow.)United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018) (finding that request for discovery on claims of selective enforcement in the stash house reverse-sting operations context are governed by a less rigorous standard than that applied to claims of selective prosecution under *Armstrong.) United States v. Hare*, 820 F.3d 93,102 (4th Cir. 2016) (finding that even with the reduced standard and evidence sufficient to warrant discovery into selective enforcement, the defendants did not demonstrate they were entitled to discovery beyond what the government had provided)  The lower standard has not been employed in cases involving traffic stops.

[3] As discussed above, in selective enforcement cases other than stash house reverse sting operations, the standard in *Armstrong* appears to be the guidepost in other Circuits. Therefore, logically, the analysis set forth by the First Circuit for "similarly situated" individuals in selective prosecution cases should be the same for selective enforcement cases.

protection principles light our path and limn the attributes of one who is similarly situated." *United States v. Lewis*, 517 F.3d 20, 27(1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 465). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Lewis*, 517 F.3d at 27 (citing *Armstrong*, 517 U.S. at 469). A district court "should assess every material fact in rendering its judgment as to which offenders should be deemed similarly situated." *Lewis*, 517 F.3d at 27; *see also United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (explaining that "defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them").

The defendant cites two cases that he claims support his contention that Darcy selectively enforced traffic laws against individuals of color, yet both cases involve men of color, similar to the defendant. The first, *State of Maine v. Edward Williams,* YRKCD-CR-2018-00713, pertains to a traffic stop of a black man which resulted in a canine hit on a vehicle and the discovery of drugs. After a suppression hearing, a State of Maine Superior Court Judge suppressed the recovered drugs on the grounds of a prolonged traffic stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015). Darcy did not stop the vehicle occupied by Williams, but did observe Williams initially speeding and radioed another trooper about his observation. Darcy did assist once the vehicle was stopped.

Second, the defendant cites *United States v. Terrel Walker*, 19-220-JDL, a case charged in the District of Maine that was subsequently dismissed on September 23, 2020. In that case, Darcy is overheard speaking to another trooper on the vehicle dashboard camera. This

conversation occurs, prior to Walker's vehicle being stopped for a traffic infraction. A transcript of the pertinent conversation is below:

> Trooper Darcy: Like if I see a white thug, I'm going to be interested, just like a black thug, or a fuckin' Chinese thug. Like, I'm interested in thugs, that's not racial profiling. Like some black guy goes by, and he's just some normal dude from Portland, like whatever. This guy kind of looks like a thug, to be honest with you.
>
> Other Trooper: You see the guy driving?
>
> Trooper Darcy: Yeah. He's wearing a wife-beater, he's got dreads, he looks like a thug, he may not be. And I'm not profiling him racially, because I don't care that he's white, black. White kid, neck tats all over him, fucking sideways hat, thug, you know what I mean. So like I get... I hate when people try to make it seem like that's what it is. I care about where people are from, and the way they seem, do you know what I mean? Like, do they seem like they could be involved in the drug game, or gangs, you know what I mean? I don't give a fuck whether they are black or white, like... And I like saying this, Nicole has a niece who is half black, I'll tell someone like, my niece is half-black, don't play that racial shit with me. [4]

Following this conversation, Darcy stopped the vehicle for a lane violation, a canine responded and Walker was found in possession of drugs and a loaded firearm. Neither case aids the defendant in making a credible showing of some evidence that a similarly-situated individual of *another* race could have been, but was not stopped or arrested in similar circumstances to the instant case. The defendant's motion is devoid of any other factual information. As a result, the defendant has failed to meet the burden established in *Armstrong* to show that other races could have been stopped and/or arrested but were not, and is not entitled to the discovery he seeks.

---

[4] The government is working with the defendant on a joint stipulation of a transcription of the pertinent portion of the Watchguard video. The government asks for leave to file the stipulation once it is finalized. Additionally, the Government can provide the video for an *in camera* review at the Court's request.

## CONCLUSION

The government respectfully requests that the Defendant's Motion for Reconsideration of Discovery be denied.

Dated: October 23, 2020

                                         Halsey B. Frank
                                         United States Attorney


                                         /s/ Meghan E. Connelly
                                         Meghan E. Connelly
                                         Assistant United States Attorney
                                         U.S. Attorney's Office
                                         100 Middle Street Plaza, East Tower
                                         Portland, ME  04101
                                         (207) 780-3257
                                         Meghan.connelly@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically filed the Government's Opposition to the Defendant's Motion for Reconsideration of Discovery with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record.

Halsey B. Frank
United States Attorney

/s/ Meghan E. Connelly
Meghan E. Connelly
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME  04101
(207) 780-3257
Meghan.connelly@usdoj.gov